Good morning and please be seated. Before we begin, I would like to thank our wonderful colleague from the Southern District of New York, Judge Furman, for joining us. We need all the help we can get, Judge Furman. We very much appreciate that you are with us. As for the calendar, I understand that all counsel are present for the matters to be argued today, this morning, and will therefore dispense with the calling of the calendar. There are five matters on today's calendar, including Lee v. Delta Airlines, case number 24850, and Crispin v. Roach, case number 24460, each of which is on submission, deemed submitted, and as to each, we will reserve decision. We will therefore start right away to hear argument in United States v. Kurzajczyk, case number 24604. Good morning, Your Honors, my name is Jeremiah Donovan, you've appointed me to represent Mr. Kurzajczyk. In this case, we're pretty far down a slippery slope, and the government is seeking to push you down to the bottom of that slope. The Supreme Court has told you, has told us, that it is permissible to dispense with the Fourth Amendment warrant requirement with respect to probationers, and I think people on supervised release can be described as probationers, so long as there's a specific condition of their release that allows for probation officers to conduct searches, and so long as there is reasonable suspicion. Then this Court, in Olivares and in Poole, has said that a district court can issue a condition of supervised release that permits a probation officer to conduct a search without a warrant and without reasonable suspicion, just so long as the district court jumps through hoops, essentially, just so long as the district court conducts the individualized assessment of... But, Mr. Donovan, this case is not, the issue in this case is not the permissibility of a condition of supervised release, which was the question in Olivares. The question here is whether the search that actually was conducted was permissible under the Fourth Amendment. Why isn't our decision in Braggs controlling on that? That is to say, Braggs holds... Braggs is of almost no use whatsoever to you. Why? Braggs says you don't even need a reasonable suspicion as long as it's reasonably related to the parole probationary function. Isn't that the case here? No, it doesn't say probationary function. Bragg was on parole. Bragg essentially is a prisoner in prison who's been allowed to go out and serve the rest of his time. We've said supervised releasees have a diminished expectation for the same reason. You're trying to ensure that they're not going to commit any additional violations or any additional crimes. Let me ask you to take a step back, though. We're talking about a home visit. You would agree you don't need reasonable suspicion to conduct a home visit, right? You would agree with that? I would agree that you do not need reasonable suspicions for a home visit. So the question is, in the course of a home visit, can you conduct a walkthrough without reasonable suspicion? That's the issue here, isn't it? Okay. So if the purpose of a home visit in Reyes, we said the purpose of a home visit is to determine whether the supervisee is violating the terms of his supervised release, including the condition that he not commit any further crimes. How do you do that if you walk in, your client was not allowed, they were allowed to do unannounced inspections of his computer as a special condition, right? He wasn't allowed to have children. He wasn't allowed to be in contact with children, right? So if they walk into his home, I don't know how it works, I guess he gets to pick where they come in, like here, come into the kitchen. Is that how you think it would work? No. How does it work then? If you're conducting a home visit without reasonable suspicion, you walk into the home, where do you go? I think you go where a visitor usually goes, and that depends upon the house. I mean, in an Irish Catholic house like mine, you sit in the kitchen. He picks. He says, come into my kitchen. Is that how it works? It's a little more complicated than that. If he takes you somewhere where a visitor would not usually go, that creates reasonable suspicion. So let's say it's an apartment building, and he goes down to the foyer. That's fine. He picks the living room, okay? So he brings you to the living room, and you say, look, my purpose here in this home visit is to make sure you're complying with your conditions of release. I want to walk through the house and make sure there's no suggestion that any children are living here, and I want to make sure you don't have any computers. But it's not me that's telling you this. What you are reading from is the administrative office of United States courts' guidance to probation officers and the Northern District of New York's guidance to probation officers. That's a Judge Furman's question. What does that have to do with the Fourth Amendment? The question is, under the Fourth Amendment, can you walk through someone's house to ensure that they're complying with the conditions of their release? The guidance doesn't control that. And what that guidance to probation officers say is, you should ask the probationer if you can go through the house. And you've got to get his consent in order to do that. That becomes a condition of the Fourth Amendment? Because that's what some guidance says? That is what the U.S. courts and the U.S. probation office have said is reasonable. And it is a condition of the Fourth Amendment that it be reasonable. That's why, with respect to the parole guy, the parolee has signed a document saying, I consent to being searched at any time. But where in Braggs, I understand that you argue in your brief that Braggs is distinguishable because of that consent. But did that consent play any role in this court's analysis of why that search was permissible under the Fourth Amendment? The court doesn't mention the consent. I mean, it's mentioned as part of the facts, but not as part of its analysis.  But it just seems to me that the situation of a parolee is just different from the situation of somebody on supervised release. And I think that comes out in Braggs. I'm not sure that the court actually... The holding of Braggs is that a search is permissible under the Fourth Amendment if it's quote-unquote, reasonably related to the officer's duties, correct? Is that... Right. That's an accurate statement?  And this court has also held that parolees and probationers and supervised releasees are essentially in the same position vis-a-vis the Fourth Amendment in terms of the relationship with their supervising officers, correct? I don't think parolees and people on supervised release are in the same position. Well, that's what we held in Reyes, so assume that. Well, okay, okay. But I think by concentrating on the purposes of what the probation officer needs to do, you're losing total sight of the Fourth Amendment. I mean, it is reasonable for a police officer in the course of his duties who thinks, who has a hunch that there are drugs in a house, to go into that house and seize those drugs. That's reasonable for him. That's within the scope of his duties. But it's not permitted by the Fourth Amendment. And a probation officer is told by... A home visit becomes... We have an aspect... The purpose of a home visit becomes useless if you can't go anywhere. You come in and you just stand there and you're like, hi, I'm here, I'm conducting a home visit, but you can't go anywhere. You've defeated the whole purpose of the home visit. But that's not true. I mean, what we see in the case... What do you learn from the home visit if you step into the hallway inside the door and talk to the guy? What we see in the case... Other than that he's there. What we see in the cases is what happens in real life is, they go in for a home visit, they ask the probationer, do you mind if I walk through? They walk through and they find stuff. That's what happens. That's what we see in the... But they need consent then. You're saying you need consent. If someone is... And then what happens? If someone has a child or a gun in the other room and they're not supposed to have them, I think they're unlikely to give you that consent, are they? No, they don't have to give you... And if they don't give you that consent, that increases... Let me just ask you, your time's almost up, but the alternative finding of the district court was that good faith should apply. And you had like almost two sentences in your brief about that. But I don't understand why you concede in your brief that there's no case law prohibiting this. You say this is a matter of first impression. And as Judge Furman pointed out, the case law that's out there at least suggests that this is okay, even if it doesn't... There's a Fifth Circuit case, LeBlanc, that says it's okay. So why wouldn't good faith apply here at a minimum? And I would add to that that Olivares, which is the case you do rely principally on, was decided after the search in this case. So... Right. Okay. So with respect to good faith, and let me speak quickly so I can get my time in. That's okay. The good faith exception says that if an officer conducts an illegal search, but he's relying on a warrant issued by a court... Last year in Meagher, the USV Meagher, Judge Radji rejected that. She said it generally applies when there's a warrant, but she says nevertheless the exception can also apply where officers committed a constitutional violation by acting without a warrant under circumstances they don't reasonably know at the time were unconstitutional. So you don't need a warrant to rely on the good faith exception. I know. But they have to act in good faith. And the good faith has to be based on something, okay? Here the probation officer had conditions of probation that she had seen, that she had had the guy sign, that said you can search, but you need reasonable suspicion. So she knew that. She had this document that I didn't have, that my brother frankly put in his brief. What case law told her she could not do this? What case told her you can't do this? Which one? It's not just case law. Why do we have this exception to the warrant requirement? It's because administrative offices need to conduct searches. And if an administrative office sets up a search regime in which they tell their officers you can search, but you need reasonable suspicion. I take it your argument is based on the guidance. It's based on the guidance. It's based on a specific condition that was a probation that the district court promulgated and upon the rules and regulations that the officer is supposed to follow. So Mr. Donovan, you've reserved two minutes of rebuttal. You've reserved two minutes of rebuttal. And we'll hear from the government, then we'll hear again from you. Thank you very much. Thank you. Thank you. Mr. Sutcliffe. Good morning. Good morning. May it please the court, Thomas Sutcliffe on behalf of the United States. I'll focus as well solely on the Fourth Amendment issue. In United States v. Braggs, this court held that a parole officer's search of a parolee is constitutionally permissible under the Special Needs Doctrine so long as it is reasonably related to the parole officer's exercise of his duties. It further held that such a search is permissible even if it's not based on reasonable suspicion. And that decision makes clear that a suspicionless parole search is constitutionally permissible even if it's not explicitly authorized by one of the conditions of the defendant's release. So in Braggs, for example, this court upheld the suspicionless search by a New York State parole officer despite the fact that at the time, the State Department of Corrections had a policy in place that effectively imposed a reasonable suspicion requirement. As has previously been discussed during my opponent's argument, this court has stated at least twice, both in Reyes and Olivares, that a state parolee is for constitutional purposes functionally in the same position as a federal supervisee. So with all that in mind, the sole question here is whether Officer Deo's search or walkthrough of the defendant's residence was reasonably related to her duties. And among those duties, first and foremost, was the duty to ensure that the defendant was not committing new criminal- Can you take me through the guidance that Mr. Donovan has referred us to about what probation officers should and shouldn't do in connection with the home visit? Your Honor, the administrative court said there's effectively two sets of guidance. The one appears in the appendix that was discussed below. That's general guidance addressing home visits. That states that in terms of a home visit, at least the first home visit is expected to be more thorough, include a more thorough walkthrough. But as we also noted in our brief, particularly in footnote 12, there is a separate set of guidance that deals specifically with people who have been convicted of sex offenders. And what that effectively states- And can we consider that since it wasn't part of the district court record? Your Honor, I think the court could take judicial notice of it, particularly given that there's been no criticism of its accuracy or its genuineness in this case. But I think either policy, I think the sex offense specific guidance puts a higher focus on conducting a more thorough home visit. Even without consent? Even without consent? It does require consent, Your Honor. But what I would say in response to that is, as this court has noted before, particularly in United States v. Newton, consent is not a requirement for lawful probation. The argument would be, if our analysis is, is it reasonably related to the supervision, the arguments that Donovan is making, well, if their own guidance suggests that they don't need to do this unless there's consent, then it's not reasonably related because their own internal guidance says you don't need to do this to supervise the person properly. That would be the argument. That's how the guidance kind of seeps into the legal analysis. Or is that incorrect? No, Your Honor, because the lack of consent here, even assuming that that portion of it was violated, the lack of consent doesn't make the search not reasonably related to the officer's duties. It merely means that at worst, the officer may have violated what is effectively a prophylactic rule designed to go above and beyond what the Constitution also already requires. The idea is the guidance are your duties. These are your duties as a probation officer. You're supposed to do X, Y, and Z, which includes, in this situation, obtaining consent. That would be the argument. These are your duties. So it's not reasonably related to the duties if this is what you've been instructed to do by your own department. But the fundamental duties of a probation officer, which I think this court has said in multiple cases, involves rehabilitating the defendant. It involves supervising the defendant and make sure he's not a threat to the public. Consent doesn't play into that. So the guidance is irrelevant to determining whether or not it's reasonably related to the duties? Is that the government's position? Well, Your Honor, I don't think the court has to rely on the guidance to reach that conclusion here, given the inherent duties of a probation officer, and also given the considerable evidence, case-specific evidence, that probation officers here had to be concerned that there was a potential violation. The other issue in Bragg's that potentially would make it different is he signed a form where he agreed to permit the parole officer to visit his residence, to permit a search and inspection of his person, residence, or property. So as part of his supervision as a parolee, he agreed to that. There was this additional guidance out there that suggested you need a reasonable suspicion, but that was his consent, right? Isn't that a distinction? Doesn't that make that a much easier case? For two reasons. One, because there was this policy in place that limited the scope of that. So functionally, what was being applied to the defendant in Bragg's was still a reasonable suspicion requirement. I think that condition has to be viewed alongside the limitations that Department of Corrections policy put in place. But more importantly, the Bragg's decision never actually relied on that condition at all. It did note that in the Sampson-Knights framework, if you had had a police search, then it might be relevant in that situation. Because when you're talking about law enforcement searches, certainly the defendant's expectation of privacy has a higher degree of significance. But the Court of Bragg's is very clear that because this was under the special needs doctrine, the defendant's reasonable expectation of privacy was much less relevant to the analysis. Instead, the ultimate question- We also said in Bragg's that once he had the tip suggesting that there were guns, then he and his team were constitutionally permitted to search the house to determine whether he was plying with the condition. So that suggests that just doing this without any tip might be problematic or am I misreading that? I certainly agree, Your Honor. There has to be some individualized concern that the defendant's violating the conditions of his release. In Bragg's, it was an anonymous tip. Here we have, if anything more- You do concede that? You concede that? So my hypothetical where someone who's not allowed to have children in his home because he's a sex offender and you're allowed to do unannounced inspections of his computer, the government would, unless there was some evidence that one of those, that he had a computer that he shouldn't have or that there was a child in the house that a probation officer could not just walk in during a visit and say, you know what, I just want to walk through the house to make sure you have no computers and no children in the house. Is the government's position that would be not permissible under the Fourth Amendment? Your Honor, I would say the court doesn't have to reach it here. I mean, the limitation Bragg's puts on is that it can't be arbitrary, capricious or done for the purpose of harassment. I think the full scope of what that means hasn't been fully articulated. I guess I think the simplest way to resolve this is that in this particular case, the probation officer had just as much individual facts of a potential violation as did the parole officer in Bragg's. So even if we assume some particularized concern had to have been present, it's more than satisfied here. Can I ask you what role, if any, the conditions of release should play here? And it sort of builds on the questions that Judge Bianco was asking, but isn't the function of the officer defined in part by the meets and bounds of those conditions? And let me ask, as a threshold matter, you concede, I take it, I think the conditions permitted a home visit without any reasonable suspicion, but a search required reasonable suspicion. Is that correct? Under the conditions, yes. And you concede in your brief here that what happened here was actually a search, correct? That's correct. Yes, we have characterized it as a search. All right. So I guess the question I have is, to the extent that the conditions didn't permit a search to be done without reasonable suspicion, is it consistent with the duties of the officer to conduct a search without reasonable suspicion? And what role, therefore, should Oliveris play in our analysis in the sense that it requires an individualized assessment before imposing conditions? So in other words, what role should the conditions play in this analysis is sort of similar to what role the guidance should play? I think it's best to think of the special conditions as essentially setting the floor for what's constitutionally permissible. So had there been a suspicionless search condition here, I think in some respects it would be an even easier case. It would give unambiguous authority to probation officers to conduct suspicionless searches as opposed to under the Bragg's analysis, which arguably requires a more fact-specific determination. But just because special conditions set the floor for what's constitutionally permissible, they don't set the ceiling. They don't purport to define every circumstance in which a probation officer can conduct such a search. And I don't think there's anything about these special conditions or any other that precludes a probation officer from conducting a suspicionless search. If it's otherwise constitutionally permissible, given the facts that they're observing. Remind me, Mr. Sutcliffe, there were prior visits, correct? By this probation officer? There were, yes, on an approximately monthly basis. And what, if anything, prompted the concern related to the defendant here? Your Honor, I don't know that the prior visits were prompted by a specific concern. No, what prompted the concern in connection with this visit? Were there, what happened in the prior visits that might have prompted the concern here? Your Honor, there were several things. First, the Officer Deo, and again, at least these are facts that I think of a reasonable probation officer and that, putting aside Officer Deo's subjective motivations, I think these are facts which a reasonable probation officer could have concluded, led to the conclusion that the defendant was violating the conditions of his release. First, there's the fact that... Meaning there was reasonable suspicion? Your Honor, I think it comes very close to reasonable suspicion, but at the very least, these are articulable facts that support the conclusion that the defendant's violating the conditions of release. So, for example, during a prior home visit, Officer Deo had found that the defendant was in possession of multiple digital cameras. Those are devices capable of storing data, which the defendant was already prohibited from possessing without permission under one of the special conditions. She had also discovered that the defendant was in possession of an internet-capable printer. She didn't consider that a violation for some reason, right? She didn't consider the cameras to be a violation for some reason, right? She did not seek... She did not indicate that she found it to be a violation, no. She certainly didn't seek any corrective action on that basis, but I think if you looked at the plain terms of the special condition, it's a digital capable... I want to go back to Judge Furman's question, because I was scratching my head a little reading your brief. You do concede it's a search, but in LeBlanc, the Fifth Circuit said that if you're allowed to do a home visit pursuant to a condition of release, that you do not cross into a search if, during the home visit, the officer walks through for a minute to see if there's anything in plain view. So you think the Fifth Circuit's just wrong about that, that they don't understand that this is a search? Your Honor, the government has focused on the brags, because I think that's the clearest analysis, and it's in many ways the simplest. The LeBlanc decision, I mean, certainly for purposes of the good faith analysis, that's relevant. The LeBlanc decision is a bit muddled, just because the holding does rely heavily on consent that took place at the time of the search. So that partially explains our reluctance to put too much weight on it. But certainly, I mean, it's certainly relevant here that the defendant here has failed to point to any cases. I mean, in footnote two of LeBlanc, they say the government argues he consented to the search, but the search court didn't reach this issue or make findings of fact concerning his consent. And because our analysis makes it unnecessary to do so, we declined to reach the consent issue. So they didn't note the consent, but they specifically said that doesn't alter their analysis. So they said at the end of the opinion pretty clearly that he did not cross the line from a home visit to a search in this situation and doesn't need reasonable suspicion. Your Honor, I don't recall the language of the footnote, and I apologize for that. My recollection of the holding was that it was at least ambiguous as to how much weight they were putting on the probation officer's inherent authority versus the consent that occurred here. In any case, I think the court certainly can go down that road and encompass this within a visit. But I think the simpler analysis here is to rely on Bragg's because that would validate what the probation officer did, regardless of whether or not this is characterized as a visit. Your Honors, I know my time has expired. May I briefly touch upon the Herring analysis? I'll give you 30 seconds. Thank you. I would just emphasize, Your Honor, that for all the reasons previously stated, at the least, the Bragg's decision could be plausibly construed to give probation officers considerable discretion to conduct suspicionless searches in circumstances like this one. And I would note along the same lines that the defendant here has failed to cite any case, binding or otherwise, where a court has invalidated a probation search, let alone a search under a comparable set of facts. That's a good faith issue. Okay. Thank you very much. Thank you, Your Honors. Mr. Donovan. One of the arguments that my brother makes is kind of unfair, and he's actually responding to Judge Woyer's question. But when he talks about what the probation officer based her search on and goes through certain facts, down below, the government did not make any claim that there was any reason for her to search. They did not make any claim as to the facts that justified the search. And in addition, they asked that there be no hearing. And the judge agreed with them that there should be no hearing. So to get up now and say, oh, there were facts. Well, he was answering my question. He was answering my question. Right, right. So you're faced with a situation in which there is no reasonable suspicion. Can I clarify one thing? You're not arguing that the search here was arbitrary, capricious, or harassing, are you? Well, I don't think any search by any probation officer of anybody who's been convicted of child pornography would ever be harassing or vindictive. But so just to answer my question straightforwardly, are you arguing that the search here was arbitrary, capricious, or harassing? Yes or no? It was not arbitrary, capricious, or what? Or harassing. It was not harassing. I don't think it was capricious, but I do think it was arbitrary. It was not based upon reasonable suspicion. I mean, my brother says he had a camera, he had cameras, and cameras could store digital information. The condition of probation was you can't have digital storage devices. I mean, my microwave oven stores digital information. The argument that it was arbitrary was not made below. The argument was that it was without reasonable suspicion. And now you seem to say that those are the same thing? Same concepts?  I mean, if you've got a condition of probation that says you can search, but you need reasonable suspicion, then to search without reasonable suspicion is arbitrary. And that brings me back to the point I really want to make with your honor, and that is you can't make the decision based solely upon what probation needs. I mean, probation may decide there's a whole bunch of things that we should do that they were not permitted to do in the conditions of probation that were promulgated. It is called the special needs doctrine. But if that's all you look at, what you're doing is you're kind of vitiating the importance of Oliverus. And just one final little thing that I observed in preparing for today's argument. I noticed that the judgment in this case, not the one that we're talking about, the conditions that we're talking about, but the judgment in this case that the judge issued after the conviction in this case has standard conditions of probation.